SCHAFER AND WEINER, PLLC
Michael E. Baum (MI P29446)[1]
John J. Stockdale, Jr. (MI P71561)[2]
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
Phone: (248) 540-3340
Fax: (248) 971-1531
mbaum@schaferandweiner.com
jstockdale@schaferandweiner.com
*Pro Hac Applications have been granted.*

FLETCHER & LEE
Elizabeth Fletcher, Esq.
Nevada Bar No. 10082
Cecilia Lee, Esq.
Nevada Bar No. 3344
448 Ridge Street
Reno, Nevada 89501
A.    Telephone: 775.324.1011
Email: efletcher@fletcherlawgroup.com
Email: clee@fletcherlawgroup.com

Attorneys for Debtor STOHO Enterprises, Inc.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| In re:<br><br>STOHO ENTERPRISES, INC.<br><br>Debtor. | Case No. 22-50151-nmc<br>Chapter 11 (Subchapter V)<br><br>Hearing Date: June 14, 2022<br>Hearing Time: 9:30 a.m. |
|---|---|

**SUBCHAPTER V**
**PLAN OF REORGANIZATION**

> **Nothing contained herein shall constitute an offer, acceptance, or a legally binding obligation of the Debtor or any other party in interest and this Plan is subject to approval by the Bankruptcy Court. This Plan is not an offer with respect to any securities.**

---

[1] *Pro hac vice* application granted at DN 34.

[2] *Pro hac vice* application granted at DN 33.

{00944026.4}

1

## INTRODUCTION

STOHO Enterprises, Inc. (the "Debtor") proposes this plan of reorganization (the "Plan") for the resolution of outstanding claims against and interests in the Debtor pursuant to subchapter V of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code" or "Code")[3]. Subject to the terms of this Plan, this Plan contemplates the Debtor's reorganization. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in Article I.B hereof. The Debtor is the proponent of the Plan under Bankruptcy Code sections 1189(a) and 1129.

## ARTICLE I

### DEFINITIONS AND RULES OF INTERPRETATION

A.    **RULES OF INTERPRETATION.** For purposes of this document: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine and neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein", hereof", and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) except as otherwise noted herein, any reference to DN or docket numbers are references to docket numbers in the Subchapter V Case; and (g) the rules of construction set forth in section 102 shall apply.

---

[3] Except as otherwise noted herein, all section references herein are references to sections of the Bankruptcy Code.

{00944026.4}

    **B.**   **DEFINITIONS.**  The following terms (which appear in the Plan as capitalized terms) shall have the meanings set forth below.  A term used in the Plan and not defined in the Plan but that is defined in the Bankruptcy Code, or the Bankruptcy Rules shall have the meaning set forth in the Bankruptcy Code or the Bankruptcy Rules.

    1.1   "**Administrative Claims**" means certain Claims for costs and expenses of administration of the Subchapter V Case described in sections 507(a)(2) and (3), which include, but are not limited to, Claims allowed under section 503(b) for (a) any actual and necessary expenses of preserving the Estate; (b) any actual and necessary expenses of operating the Debtor's business; (c) any actual indebtedness or obligations incurred or assumed by the Debtor during the pendency of this Subchapter V Case in connection with the conduct of its business; and (d) any actual expenses necessary or appropriate to facilitate or effectuate the Plan.

    1.2   "**Administrative Claims Bar Date**" means the deadline for filing requests for payment of Allowed Administrative Claims (other than Professional Fee Claims), which shall be the first Business Day that is forty-five (45) days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

    1.3   "**Administrative Claims Objection Bar Date**" means the deadline for filing objections to requests for payment of Allowed Administrative Claims (other than requests for payment of Professional Fee Claims), which shall be the first Business Day that is one hundred eighty (180) days following the Effective Date; provided, that, the Administrative Claims Objection Bar Date may be extended by order of the Bankruptcy Court.

    1.4   "**Administrative Creditor**" means any Creditor holding an Allowed Administrative Claim.

    1.5   "**Allowed**" shall mean, with reference to any Claim or Interest, or any portion thereof, in any Class or category specified, against the Debtor, (a) a Claim or Interest that has been listed by the Debtor in its Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed and as to which no objection to allowance or priority or request for estimation has been filed prior to the Claims

{00944026.4}

3

Objection Bar Date; (b) a Claim or Interest for which a Proof of Claim has been timely filed in a liquidated amount and not contingent and as to which no objection to allowance, to alter priority, or request for estimation has been timely interposed and not withdrawn within the applicable period of limitation fixed by the Plan or applicable law; (c) a Claim or Interest as to which any objection has been settled, waived, withdrawn, or denied by a Final Order to the extent such Final Order provides for the allowance of all or a portion of such Claim or Equity Interest; or (d) a Claim or Interest that is expressly allowed (i) pursuant to a Final Order, (ii) pursuant to an agreement between the Holder of such Claim or Interest and the Debtor or the Reorganized Debtor, or (iii) pursuant to the terms of the Plan. Unless otherwise specified in the Plan or in an order of the Bankruptcy Court allowing such Claim or Equity Interest, "Allowed" in reference to a Claim shall not include (a) any interest on the amount of such Claim accruing from and after the Petition Date; (b) any punitive or exemplary damages; or (c) any fine, penalty, or forfeiture. Any Claim listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim has been timely filed, is not considered Allowed and shall be expunged without further action and without any further notice to or action, order, or approval of the Bankruptcy Court.

1.6    "**Allowed Claim**" means a Claim or any portion thereof, without duplication, that has been Allowed.

1.7    "**Avoidance Actions**" means (a) any and all actions that are filed or that may be filed pursuant to sections 544, 545, 547, 548, 550, or 551, or applicable non-bankruptcy law that may be incorporated or brought under the foregoing Bankruptcy Code sections, or (b) any other similar actions or proceedings filed to recover property for or on behalf of the Estate.

1.8    "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Nevada.

1.9    "**Bankruptcy Rules**" or "**Rules**" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court that became effective on August 1, 1991, and any amendments thereto, and the Federal Rules of Civil Procedure, as amended, and as made

{00944026.4}

applicable to this Subchapter V Case or proceedings therein.  To the extent applicable, Bankruptcy Rules also refers to the Local Rules of the U.S. District Court for the District of Nevada, as amended and as applicable to this Subchapter V Case.

1.10    **"Bar Date"** means the date(s), if any, designated by the Bankruptcy Court as the last date(s) for filing Proofs of Claim or Interest against the Debtor, or otherwise asserting any Claim against the Debtor, or, in the absence of such designation, as shall be applicable under the Bankruptcy Rules.  Pursuant to Local Rule 3003(b) and paragraph 7 of the *Order Setting (A) Status Conference; (B) Claims Bar Date; (C) Deadline for Election under 11 U.S.C. § 1111(b)(2) and (D) Other Deadlines (for Use Only in Cases under Subchapter V of Chapter 11)* [DN 10] (the "Scheduling Order"), proofs of claim must be filed not later than seventy (70) days after the order for relief, which is June 2, 2022.

1.11    **"Business Day"** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.12    **"California Lender"** means Nejatollah Neissani and Lida Masachi, Trustees of the 2003 Nejatollah Neissani & Lida Masachi Revocable Trust.

1.13    **"California Lender's Deed of Trust"** has the meaning ascribed to it in Article 4.2.

1.14    **"California Payment Date"** has the meaning ascribed to it in Article 4.2.2(B).

1.15    **"California Property"** means that certain parcel of real property commonly known as 6435 Madden Way, Los Angeles, California.

1.16    **"Cash"** means cash and cash equivalents, in legal tender of the United States of America.

1.17    **"Causes of Action"** means any and all present or future claims, rights, legal and equitable defenses, offsets, recoupments, actions in law or equity or otherwise, choses in action, obligation, guaranty, controversy, demand, action suits, damages, judgments, third-party claims, counter-claims, cross-claims against any Person or Entity, whether known or unknown, liquidated or unliquidated, foreseen or unforeseen, existing or hereafter arising, whether based on

{00944026.4}

5

legal or equitable relief, whether arising under the Bankruptcy Code or federal, state, common, or other law or equity, whether or not the subject of a pending litigation or proceedings on the Effective Date or thereafter, including without limitation, all other actions described in the Plan, including all Avoidance Actions.

       1.18    "**Claim**" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, contested, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

       1.19    "**Claims Objection Bar Date**" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) one hundred eighty (180) days after the Effective Date and (b) such later period of limitation as may be specifically fixed by an order of the Bankruptcy Court.

       1.20    "**Class**" means a category of Holders of Claims or Interests as described in Article IV of this Plan, which are (i) subject to being placed in a class as described in section 1123(a)(1) and (ii) which may be entitled under section 1126 to vote to accept or reject the Plan.

       1.21    "**Confirmation**" means the entry of the Confirmation Order on the docket of this Subchapter V Case.

       1.22    "**Confirmation Date**" means the date upon which the Confirmation Order is entered by the Bankruptcy Court confirming the Plan, which order becomes final and non-appealable after the Confirmation Hearing.

       1.23    "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to sections 1191 and 1128.

       1.24    "**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1191.

       1.25    "**Creditor**" means any Holder of a Claim against the Debtor.

{00944026.4}

1.26   **"Cure"** means the payment or other honor of all obligations required to be paid or honored in connection with assumption of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, including, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law: (a) the cure of any non-monetary defaults to the extent required, if at all, pursuant to section 365 of the Bankruptcy Code, and (b) with respect to monetary defaults, the distribution within a reasonable period of time following the Effective Date of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption (or assumption and assignment) of an executory contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations or such lesser amount as may be agreed upon by the parties, under such executory contract or unexpired lease.

1.27   **"Cure Claims"** means any amount required to be paid under section 365(b)(1) in connection with the assumption of executory contracts or unexpired leases.

1.28   **"Debtor"** means STOHO Enterprises, Inc., a Nevada corporation.

1.29   **"Demand Notice"** has the meaning ascribed to it in Article 9.2.

1.30   **"Disallowed"** means (a) a Claim or Interest or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or Interest or any portion thereof that is listed in the Debtor's Schedules at zero, unknown, or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or Interest or any portion thereof that is not listed in the Debtor's Schedules and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.31   **"Discharge Order"** has the meaning ascribed to it in Article 9.1.2.

1.32   **"Disputed"** means, with respect to any Claim or Equity Interest, any (a) Claim that is listed on the Schedules as unliquidated, disputed, or contingent; (b) Claim or

{00944026.4}

7

1  Equity Interest as to which the Debtor or any other party-in-interest has interposed a timely

2  objection or request for estimation in accordance with this Plan, the Bankruptcy Code, the

3  Bankruptcy Rules and any orders of the Bankruptcy Court, or which is otherwise disputed by the

4  Debtor in accordance with applicable law, which objection, request for estimation or dispute has

5  not been withdrawn or determined by a Final Order; (c) any Claim evidenced by a Proof of Claim

6  which amends a Claim scheduled by the Debtor as contingent, unliquidated, or disputed; or (d) any

7  Claim or Equity Interest that is not an Allowed Claim or Allowed Equity Interest.

8      1.33    "**Effective Date**" means the first Business Day after the Confirmation Order

9  becomes a Final Order.

10     1.34    "**Entity**" means an "entity" as defined in section 101(15).

11     1.35    "**Escrow Agent**" has the meaning ascribed to it in Article 4.1.1(D).

12     1.36    "**Estate**" means the bankruptcy estate of the Debtor created under section

13  541 upon the commencement of the Debtor's Subchapter V Case.

14     1.37    "**Final Order**" means, as applicable, an order or judgment of the

15  Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject

16  matter, which has not been reversed, stayed, modified, or amended, as to which the time to appeal

17  or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as

18  to which any appeal that has been taken or any petition for certiorari that has been or may be filed

19  has been resolved by the highest court to which the order or judgment was appealed or from which

20  certiorari was sought; provided, that, the possibility that a motion under Rule 60 of the Federal

21  Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local

22  Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent

23  such order from being a Final Order; provided, further, that the Debtor reserves the right to waive

24  any appeal period.

25     1.38    "**General Unsecured Claim**" means a Claim against the Debtor, which is

26  not an Administrative Claim, Professional Fee Claim, Priority Tax Claim, Secured Claim, or

27  Priority Claim.

28

{00944026.4}

1.39   **"Group"** means Creditors who hold Claims against the Estate which are (i) not subject to being placed in a Class pursuant to section 1123(a)(1) and (ii) not entitled under section 1126, to vote to accept or reject the Plan.

1.40   **"Health Department"** means the Nevada Department of Health and Human Services, Division of Public & Behavioral Health – Environmental Health Section.

1.41   **"Holder"** means a Person holding a Claim, Interest, or Lien, as applicable.

1.42   **"Impaired"** means a Claim, Interest, or Class of Claims that is impaired within the meaning of section 1124.

1.43   **"Interest"** means, with respect to the Debtor as of the Petition Date, any capital stock or other ownership interest in the Debtor, whether or not transferable, any option, call, warrant, or right to purchase, sell, or subscribe for an ownership interest or other equity security in the Debtor, or any redemption, conversion, exchange, voting, participation, dividend rights and liquidation preferences relating to such capital stock or other ownership interest.

1.44   **"Interest Rate"** means (a) with respect to a Tax Claim, the lowest rate applicable under non-bankruptcy law, (b) with respect to all other Claims entitled to interest under the Bankruptcy Code and this Plan, and except as otherwise provided for in this Plan, the interest being paid or earned on a five-year Treasury Note as published by the *Wall Street Journal* on the Effective Date, (c) with respect to Class II Claims, the interest being paid or earned on a five-year Treasury Note as published by the *Wall Street Journal* on the Effective Date plus two percent (2%); (d) with respect to Class IV Claims, the federal judgment interest rate as of the Effective Date, or (e) with respect to (a) through (d), such other interest rate as may be determined by a Final Order of the Bankruptcy Court.

1.45   **"Lien"** means any charge against or interest in property to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust, or statutory lien as defined in section 101.

1.46   **"LLC"** means STOHO Enterprises, LLC, a Nevada limited liability company, which was merged with and into the Debtor.

1         1.47   **"Loan Documents"** means any and all documents involving or related to

2 the Claims asserted by such creditor including, without limitation, promissory notes, security

3 agreements, personal guarantees, business loan agreements, and such other agreements as may

4 exist related to involving the Claim(s).

5         1.48   **"Motel"** means the Diamond A Motel, an eleven-room motel operated by

6 the Debtor from the Motel Property.

7         1.49   **"Motel Lender"** means, collectively, Ty Albisu and Linda Albisu, as

8 successor-in-interest to Robert K. Stoeppelmann and Sharon L. Stoeppelmann, husband and wife.

9         1.50   **"Motel Lender's Deed of Trust"** has the meaning ascribed to it Article

10 4.1.

11         1.51   **"Motel Lender's Note"** means that certain Promissory Note, dated May

12 30, 2003, in favor of Motel Lender's predecessor-in-interest, as amended by that certain

13 Amendment to Promissory Note, dated March __, 2015.

14         1.52   **"Motel Property"** means that certain parcel of real property commonly

15 known as 140 US Highway 95, McDermitt, Nevada.

16         1.53   **"Ordinary Business Terms"** means the normal and customary trade terms,

17 practices, and programs (including, but not limited to, credit limits, pricing, cash discounts, timing

18 of payments, allowance, rebates, coupon reconciliation, normal product mix and availability and

19 other applicable terms and programs) in effect between such creditor and the Debtor on a historical

20 basis prior to the Petition Date or such other trade terms, practices and programs that are at least

21 as favorable to the Debtor as those in effect during such time.

22         1.54   **"Person"** means a "person" as defined in section 101(41).

23         1.55   **"Petition Date"** means March 24, 2022, the date on which the Debtor filed

24 its petition commencing this Subchapter V Case.

25         1.56   **"Plan Supplement"** refers to the implementing documents necessary to

26 effectuate this Plan. All of which shall be on file with the Clerk of the Bankruptcy Court no later than

27 twenty (20) days prior to the Confirmation Hearing or such later date as may be approved by the

28 Bankruptcy Court.

{00944026.4}

1.57    **"Priority Claim"** means a Claim to the extent that it is of the kind described in, and entitled to priority under, section 507(a)(3), (4), or (5), but other than any Priority Tax Claim.

1.58    **"Priority Creditor"** means any Creditor holding a Priority Claim or Priority Tax Claim.

1.59    **"Priority Tax Claim"** means a Claim under or entitled to priority under section 507(a)(8) and any Secured Claim which would otherwise meet the description of an Unsecured Claim of a governmental unit under section 507(a)(8) but for the secured status of that Claim.

1.60    **"Pro Rata"** means, at any time, the proportion that the face amount of a Claim in a particular Class bears to the aggregate face amount of all Claims (including disputed or Contested Claims) in such Class as of the Effective Date, unless the Plan expressly provides otherwise.

1.61    **"Professional Fee Claims"** means Claims on account of fees for professional services rendered and expenses incurred in connection with such services by Professionals on and after the Petition Date and prior to and including the Confirmation Date to the extent allowed by the Bankruptcy Court under sections 328, 330(a), 331 or 503(b)(2), (3), (4), or (5).

1.62    **"Professional"** means any professional employed in the Subchapter V Case pursuant to sections 327 and 1195 seeking compensation or reimbursement of expenses in connection with this Subchapter V Case pursuant to section 503(b)(4).

1.63    **"Proof of Claim"** means a proof of claim filed by a Holder of a Claim against the Debtor (as may be amended and supplemented from time-to-time pursuant to the Bankruptcy Code or Bankruptcy Rules) on or before the applicable Bar Date, or such other time as may be permitted by the Bankruptcy Court or agreed to by the Debtor.

1.64    **"Rejection Bar Date"** means for any prepetition Claim relating to any effort by the Debtor to reject an executory contract or unexpired lease under section 365 ("Rejection Damages Claim"), the claims bar date for a Rejection Damages Claim shall be the

{00944026.4}

later of (a) the Bar Date or (b) thirty (30) days after the effective date of such rejection of such executory contact or unexpired lease.

1.65    **"Rejection Damages Claim"** means any prepetition Claim relating to any effort by the Debtor to reject an executory contract or unexpired lease under section 365.

1.66    **"Reorganized Debtor"** means the Debtor upon the occurrence of the Effective Date.

1.67    **"Residence"** means that certain parcel of real property commonly known as 130 US Highway 95, McDermitt, Nevada.

1.68    **"Retained Causes of Action"** has the meaning ascribed to it in Article 9.6.

1.69    **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor pursuant to the section 521, Bankruptcy Rule 1007, and the Official Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time through the Confirmation Date in accordance with Bankruptcy Rule 1009.

1.70    **"Secured Claim"** means a Claim, which is not a Claim for taxes, secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a).

1.71    **"Subchapter V Case"** and **"Case"** means *In re Stoho Enterprises, Inc.*, Case No. 22-50151-nmc, which is pending in the Bankruptcy Court and was filed by the Debtor as a small business debtor subject to Code sections 1181-1195.

1.72    **"Subchapter V Trustee"** means Edward Burr, the trustee appointed in the Subchapter V Case pursuant to section 1183, or any subsequently appointed trustee appointed pursuant to section 1183. *See* DN 18.

1.73    **"Substantial Consummation"** has the meaning ascribed to it in section 1101(2).

{00944026.4}

1.74   **"Trigger Date"** means the second (2d) day of the thirteenth full (13th) month following the later of (i) the Effective Date or (ii) the reopening of Motel to paying guests.

1.75   **"Unimpaired"** means, with respect to a class of Claims, a class of Claims that is not Impaired.

1.76   **"United States Trustee"** means the United States Trustee for Region 17.

1.77   **"Unsecured Claim"** means a Claim that is not a Secured Claim and is not an Administrative Claim or a Priority Claim.

## ARTICLE II
### BRIEF HISTORY OF DEBTOR'S BUSINESS
### OPERATIONS AND LIQUIDATION ANALYSIS

2.1   **HISTORY OF BUSINESS OPERATIONS**.

The Debtor was established in May 2002 to own and operate motel and rental real estate. To date, the Debtor owns four parcels of real estate in Nevada from which it operates the Motel and one rental home in Los Angeles, California.

The Debtor is wholly owned by Illyssa Fogel ("Ms. Fogel").  She is responsible for the general oversight and financial operations of the Debtor and its properties including, without limitation, the Motel. Ms. Fogel is responsible for, among other things, ordering supplies, paying bills, overseeing renovations and repairs, and maintaining the Debtor's books and records.  As compensation, Ms. Fogel resides in the Residence, which is adjacent to the Motel, rent-free and received Debtor's cash flow over and above the Debtor's operating expenses (if any).

The Motel is an eleven-room motel located at 140 US Highway 95, McDermitt, Nevada, on parcel number APN 03-0598-11.  The Motel serves travelers, government employees, and mining company personnel.

Of the Debtor's other Nevada parcels, APN 03-0441-09 and APN 03-0672-05 are vacant while the Residence has a single-family home, which is Ms. Fogel's residence.

The California Property is a rental residence located in Los Angeles, California, which generates rents of $2,000 per month on a month-to-month basis.

{00944026.4}

1       Prior to the Petition Date and during 2022, the Debtor merged its subsidiary LLC with and

2    into the Debtor.  Prior to the merger, LLC owned the California Property and all the Nevada real

3    estate except the Motel Property.

4       During June 2021, the Debtor and certain of its neighbors including, without limitation, the

5    Motel Lender had a dispute regarding a shared sewer line that served the Debtor's Motel and

6    Residence and their neighbors.  As a result of this dispute, the Motel Lender, whose property is

7    not adjacent to the Debtor's property, severed and capped the shared sewer line at a point where

8    the shared sewer line only serviced the Motel and Residence in July 2021 and reported that a

9    sewage spill had occurred on the Motel Property.  During August 2021 and due to the Motel

10   Lender's tortious conduct in severing the shared sewer line, the Motel was closed by the Health

11   Department.  The Motel has been closed since and is working with the Humboldt Country Nevada

12   Public Works Department to have a dedicated sewer line installed to service the Motel and

13   Residence.

14      Until its closure in July 2021, the Motel had a history of improving bookings and generated

15   gross revenues of approximately $10,000 per month.

16      Because the Motel was closed, the Debtor was unable to operate the Motel Property and

17   fell behind with its creditors including Motel Lender's predecessor-in-interest.

18      After tortiously severing the shared sewer line, the Motel Lender acquired the loan

19   documents, including, without limitation, the deed of trust encumbering the Motel Property, from

20   the Motel Lender's predecessor-in-interest for, upon information and belief, $150,000. Thereafter,

21   the Motel Lender declared a default under the loan documents, asserted $483,623.23 was due and

22   owing thereunder as of November 29, 2021 (even though the face amount of the Note is only

23   $200,000), and began foreclosure proceedings.

24      The Debtor filed for bankruptcy protection under Subchapter V of Chapter 11 of the

25   Bankruptcy Code on the Petition Date to stop the foreclosure proceedings and reorganize its debt.

26      Since the Petition Date, the Debtor has continued to operate the Motel (to the extent

27   possible) and its rental real estate.

28

{00944026.4}

2.2    **SIGNIFICANT POST PETITION EVENTS**.

On the Petition Date, the Debtor filed the following motions, all of which are pending before the Bankruptcy Court:

1.    *Motion for an Order (I) Prohibiting Utility Companies from Terminating Services to the Debtor, and (II) Establishing Procedures for Resolving Disputes Related to Adequate Assurance Requests* [DN 6];

2.    *Motion for Entry of an Order Authorizing the Debtor to Use Cash Collateral and Granting Adequate Protection* [DN 7]; and

3.    *Motion for Entry of an Order to Continue Using Pre-Petition Bank Account and Forms* [DN 8].

Also on the Petition Date, the Debtor filed its applications to employ Schafer and Weiner, PLLC, as its general bankruptcy counsel, and Fletcher & Lee Ltd. as its local bankruptcy counsel. *See* DN 14 and 16.  Each of these applications remains pending on the Petition Date.

2.3    **LIQUIDATION ANALYSIS**.    The Debtor's Liquidation Analysis is attached as **Exhibit 2.3** and was prepared by the Debtor.  If Debtor's Plan is not accepted by the Creditors or is not otherwise confirmed by the Bankruptcy Court, the Debtor believes unsecured creditors would be fully paid in Debtor's liquidation.

2.4    **RISKS, CONDITIONS AND ASSUMPTION IN LIQUIDATION ANALYSIS**.    All values stated in the Liquidation Analysis for assets, liabilities, costs, expenses, and potential recoveries are based on good faith estimates using information currently available to the Debtor.    The estimates have not been subject to audit or appraisal.  The estimates shall in no way be construed to constitute binding guaranties, representations, or warranties and are subject to revision at any time.  Except as otherwise noted herein or in the Plan, the values for the Debtor's assets, as set forth in the Bankruptcy Schedules filed in connection with the Bankruptcy Petition, reflect the Debtor's best estimate of the market value of the assets, except where noted to the contrary.

{00944026.4}

**ARTICLE III**
**TREATMENT OF GROUPS OF CLAIMS NOT**
**SUBJECT TO CLASSIFICATION OR OTHERWISE**
**NOT REQUIRED TO VOTE FOR OR AGAINST THE PLAN**

Administrative Creditors and Priority Creditors shall be paid as follows:

3.1    **GROUP I - ADMINISTRATIVE CLAIMS**.    The Claims of Group I shall consist of, without limitation, Holders of Administrative Claims, if and when Allowed.    Administrative Claims may include, without limitation, (i) Schafer and Weiner, PLLC's fees and costs, estimated at $40,000; (ii) Fletcher & Lee, Ltd.'s fees and costs, estimated at $10,000; (iii) the Subchapter V Trustee's fees and costs, estimated at $5,000; (iv) any other Professional (if any) retained by the Debtor, (v) claims that qualify as Administrative Claims under section 503(b), including applicable tax claims, and (vi) fees and costs assessed under 28 U.S.C. §1930, if any.    However, for the avoidance of doubt, the Debtor does not expect to incur any fees and costs under 28 U.S.C. § 1930.

3.1.1    (a) Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Subchapter V Case, each Holder of an Allowed Administrative Claim – except Professional Fee Claims which shall be paid in accordance with sections 3.1.3 and 3.1.4 – will be paid in four equal installments, with the first payment due on the first business day of the first full month following the Effective Date, and the following installments due on the first business day of the month for the next three consecutive months, or (b) if the Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of business after the Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim.

3.1.2    Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court or as provided herein, unless previously filed, requests for payment of Allowed Administrative Claims, except for any Professional Fee Claims against the Reorganized Debtor, must be filed and served on the Debtor or Reorganized Debtor on or before the Administrative Claims Bar Date pursuant to the procedures (if any) specified in this Plan, as it may be amended

{00944026.4}

16

or confirmed. Holders of Allowed Administrative Claims that are required to file and serve a request for payment of such Allowed Administrative Claims that do not file and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Claims against the Debtor or its property, and such Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be filed and served on the requesting party by the Administrative Claims Objection Bar Date.

        3.1.3 **Professional Fee Claims**. Notwithstanding any other provision of the Plan concerning Administrative Claims, any Professional seeking an award by the Bankruptcy Court of an Allowed Administrative Claim on account of Professional Fee Claims incurred prior to the Confirmation Date (a) shall no later than the Administrative Claim Bar Date, file a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through and including the Confirmation Date, and (b) shall receive after such Claim is Allowed, in full settlement, satisfaction, and release of, and in exchange for, such Allowed Administrative Claim, Cash in an amount equal to the unpaid amount of such Allowed Professional Fee Claim in accordance with any Final Order allowing such Allowed Professional Fee Claim. Final Orders allowing Professional Fee Claims shall have the effect of a judgment consistent with Bankruptcy Rule 7054. Notwithstanding anything to the contrary herein or otherwise, each Holder of a Class V Interest who votes to accept or signs this Plan personally guaranties the payment of the Debtor's obligations to the Professionals for Professional Fees in Group I.

        3.1.4 **Post-Confirmation Date Professional Fee Claims and Expenses**. Except as otherwise specifically provided in the Plan, on and after the Confirmation Date, the Debtor or Reorganized Debtor, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay the reasonable fees and expenses incurred by Professionals on or after the Confirmation Date. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor or Reorganized Debtor, as applicable, may pay any Professional in the ordinary course of business without any further notice, action, order, or approval of the Bankruptcy Court.

{00944026.4}

3.1.5 **Substantial Contribution Compensation and Expenses**. Except as otherwise specifically provided in the Plan, any Person or Entity that requests compensation or expense reimbursement for making a substantial contribution to the Subchapter V Case pursuant to sections 503(b)(3), (4), or (5) must file an application and serve such application on Debtor's counsel, and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, or the Bankruptcy Rules on or before the Administrative Claim Bar Date, or be forever barred from seeking such compensation or expense reimbursement. All rights of the Debtor, Reorganized Debtor, the United States Trustee, and all other parties-in-interest to object to such request are expressly reserved.

3.2 **GROUP II - PRIORITY TAX CLAIMS.** The Claims of Group II shall consist of the Allowed Claims that are entitled to priority under section 507(a)(8).

3.2.1 After payment in full of all Claims entitled to higher priority in accordance with section 507, the claimants of this group shall receive on account of such Priority Tax Claim, twenty (20) deferred equal quarterly cash payments equal in the aggregate to the amount of each Allowed Priority Tax Claim, plus interest calculated at the applicable Interest Rate. The first quarterly payment shall be made on the first Business Day of the third calendar month after the Effective Date and quarterly thereafter. The foregoing, notwithstanding, the final payment shall be due on the fifth anniversary of the Petition Date.

3.2.2 Group II consists, without limitation, of Holders of Priority Tax Claims, if and when Allowed. Holders of Priority Tax Claims may include, without limitation, the Humboldt County Treasurer, the Los Angeles County Treasurer, and the California Franchise Tax Board.

3.2.3 Upon the failure of the Debtor or the Reorganized Debtor, as applicable, to make any payments due on an Allowed Priority Tax Claim that is not cured on or within thirty (30) days of receipt by the Reorganized Debtor of a written notice of default by the affected Priority Tax Claim Creditor, such Creditor may exercise all rights and remedies available under non-bankruptcy law for the collection of its entire Claim and/or seek appropriate relief in this Court.

3.2.4 Notwithstanding any provision in the Plan to the contrary, nothing shall (i) affect the ability of a Creditor with a Priority Tax Claim to pursue to the extent allowed by non-

{00944026.4}

18

bankruptcy law any non-Debtor for any liabilities that may be related to any tax liabilities owed by the Debtor to such Priority Tax Claim Creditor; and (ii) affect the rights to assert setoff or recoupment and such rights are expressly preserved.

        3.2.5    Upon the Effective Date, each Holder of a Priority Tax Claim shall reinstate all licenses and authorizations necessary for the Debtor to conduct business where, except for payment of Claims addressed by this Plan, the requirements for such licenses and/or authorizations have been or will be satisfied.

        3.3    **DETERMINATION OF PRIORITY CLAIMS**.  The Debtor and/or Reorganized Debtor shall have the right to challenge any Priority Claim through the claims objection process set forth in Article VII of this Plan, which challenge may include, but need not be limited to, a challenge to any penalty or interest portion of such Claim or the amount and the value of the property which forms the basis for any assessment of taxes and the computation of the tax.  The right to challenge these Claims shall include, without limitation, an objection to the assessment of the Debtor's real or personal property that may or may not have been made by the respective taxing authority.

**ARTICLE IV**
**SPECIFICATION OF TREATMENT OF**
**CLASSES OF CLAIMS OR INTERESTS NOT IMPAIRED**
**UNDER THE PLAN AND THOSE IMPAIRED UNDER THE PLAN**

All holders of Claims against the Debtor and its Estate, other than the Claims treated in Article III, are divided into the Classes set forth in this Article IV for all purposes, including voting on, confirmation of, and distribution under the Plan.  A Claim will be entitled to the treatment accorded to that particular Class only to the extent that such Claim is an Allowed Claim.

Except as specifically set forth in the Plan, nothing in the Plan shall constitute or be deemed to constitute an admission that the Debtor is subject to or liable for any Claim, and the Debtor reserves all rights to challenge any such assertion.

The Plan divides Claims and Interests into five (5) Classes and treats them as follows:

    4.1    **Class I.**    Class I consists of Allowed Claims of the Motel Lender (the "Class I Claim").  The Motel Lender has asserted it is owed $483,623.23 as of November 29, 2021, in

{00944026.4}

19

outstanding principal plus accrued interest, costs, and fees and that its Claim is secured by a recorded first priority deed of trust (including an assignment of rents) encumbering the Motel Property (the "Motel Lender's Deed of Trust"). The Debtor disputes the Motel Lender's Claim and estimates that the Motel Property has a fair market value of $750,000.

4.1.1   The Motel Lender's Claim, when Allowed, shall be fully and finally satisfied as follows:

(A)   The Motel Lender's Claim shall bear interest at 5% per annum from the Petition Date until the Motel Lender's Allowed Claim is paid in full, which is equal to the interest rate required under the Motel Lender's Note.

(B)   The Motel Lender's Claim, when Allowed, shall be paid in monthly payments through June 2, 2033, which is the term of the Motel Lender's Note, with (i) the first monthly payment due on the Trigger Date; (ii) monthly payments due on second (2nd) day of each month thereafter, and (iii) a final balloon payment due on June 2, 2033 of all amounts outstanding on that date including principal, interest, costs, and fees. For the avoidance of doubt, no payments shall be due from the Debtor or the Reorganized Debtor until the occurrence of the Trigger Date.

(C)   Each monthly payment shall be $1,073.64 as required under the Motel Lender's Note.

(D) If the Trigger Date occurs before the Motel Lender's Claim is Allowed by a Final Order, then payments required under this Article 4.1 shall be paid into an escrow account established by the Debtor with a title company or a bank, selected by Debtor in its sole and unfettered discretion, (the "Escrow Agent" until such time as the Motel Lender's Claim is Allowed by a Final Order. Upon allowance of Motel Lender's Claim, money held by the Escrow Agent pursuant to this Article 4.1.1(D) shall be promptly delivered by the Escrow Agent to the Motel Lender, but only to the extent of Motel Lender's Allowed Claim. If monies held by the Escrow Agent exceed the amounts of the Motel Lender's Allowed Claim, then such excess monies shall be paid to the Reorganized Debtor.

{00944026.4}

(E)  To the extent of a conflict between the terms of this Plan and the Confirmation Order, on the one hand, and the Motel Lender's Loan Documents, on the other hand, the terms of this Plan replace, supersede, and govern any conflicting terms of the Motel Lender's Loan Documents in all respects.

4.1.2    Nothing in this Article 4.1 prohibits the Debtor from refinancing, selling, or otherwise disposing of the Property.  In the event that a sale occurs prior to allowance of Motel Lender's Claim, then the proceeds of the sale sufficient to satisfy the Motel Lender's Claim shall be paid to the Escrow Agent to be paid pursuant to Article 4.1.1(D).

4.1.3    Nothing in this Article 4.1 impairs or prohibits the Debtor or Reorganized Debtor from pursuing any (i) objection to the Motel Lender's Claim including, without limitation, the validity, priority, extent, or amount of such Claim; (ii) setoff against Motel Lender's Claim; and/or (iii) independent claim of the Debtor against Motel Lender or either of them based on, related to, or involving the shared sewer line cut and capped by Motel Lender.

4.1.4    Until the Motel Property is sold or the Class I Claim is satisfied in full, the Motel Lender shall retain its Liens, including the Motel Lender's Deed of Trust, to secure the Motel Lender's Claim or that portion of the Class I Claim that is a Secured Claim as determined under Article 4.1 of the Plan.  Such Liens shall have the same priority as existed immediately before the Petition Date.

4.1.5    Upon the Effective Date of the Plan, all defaults under Motel Lender's prepetition Loan Documents shall be deemed waived and released; and Debtor's rights to receive, retain, and use any rents shall be reinstated to the fullest extent.  For the avoidance of doubt, any rights to any reduction in principal provided by the Motel Lender's Loan Documents shall be reinstated.

4.1.6    **This Class I is Impaired.**

4.2.    **Class II.**  Class II consists of Allowed Claims of the California Lender (the "Class II Claim").  The California Lender has asserted or may assert it is owed $161,200.00, in outstanding principal plus accrued interest, costs, and fees and that its Claim is secured by a recorded first priority deed of trust (including an assignment of rents) encumbering the California

{00944026.4}

Property (the "California Lender's Deed of Trust"). The Debtor estimates that the California Property has a fair market value of $701,000.

4.2.1    the California Lender's Claim shall be Allowed in the amount of $161,200.00.

4.2.2    The California Lender's Claim shall be fully and finally satisfied as follows:

(A)    The California Lender's Claim shall bear interest at the Interest Rate from the Petition Date until the California Lender's Allowed Claim is paid in full.

(B)    The California Lender's Claim, when Allowed, shall be paid in monthly payments over five (5) years with (i) the first monthly payment due on the last day of the third full (3d) month following the Effective Date (the "California Payment Date"); (ii) monthly payments due on last day of each month thereafter; and (iii) a final balloon payment of all amounts outstanding on that date including principal, interest, costs, and fees due on the fifth anniversary of first monthly payment required under Article 4.2.2(B)(i). For the avoidance of doubt, no payments shall be due from Reorganized Debtor until the occurrence of the California Payment Date.

(C)    Each monthly payment shall be calculated using a thirty (30) year amortization.

(D)    To the extent of a conflict between the terms of this Plan and the Confirmation Order, on the one hand, and the California Lender's Loan Documents, on the other hand, the terms of this Plan replace, supersede, and govern any conflicting terms in California Lender's Loan Documents in all respects.

4.2.3    Nothing in this Article 4.2 prohibits the Debtor from refinancing, selling, or otherwise disposing of the California Property.

4.2.4    Nothing in this Article 4.2 impairs or prohibits the Debtor or Reorganized Debtor from pursuing any objection to the California Lender's Claim including, without limitation, the validity, priority, extent, or amount of such Claim.

4.2.5    Until the California Property is sold or the Class II Claim is satisfied in full, the California Lender shall retain its Liens, including the California Lender's Deed of Trust, to

secure the California Lender's Claim or that portion of the Class II Claim that is a Secured Claim as determined under Article 4.2 of the Plan. Such Liens shall have the same priority as existed immediately before the Petition Date.

4.2.6    Upon the Effective Date of the Plan, all defaults under any prepetition Loan Documents shall be deemed waived and released; and Debtor's rights to receive, retain, and use any rents shall be reinstated to the fullest extent.

4.2.7    **This Class II is Impaired.**

4.3    **Class III.** Class III consists of secured creditors holding secured tax Claims. The members of this Class III may include the Humboldt County Treasurer and the Los Angeles County Treasurer, each of whose claims may be secured by a first priority statutory lien on the Debtor's respective real estate arising under applicable state tax law.

4.3.1    Allowed Class III creditors shall receive on account of such Class III Claim, twenty (20) deferred equal quarterly cash payments equal in the aggregate to the amount of each Allowed Class III Claim, plus interest calculated at the applicable Interest Rate. The first quarterly payment shall be made on the first Business Day of the third calendar month after the Effective Date and quarterly thereafter. The foregoing notwithstanding, the final payment shall be due on the fifth anniversary of the Petition Date.

4.3.2    Upon the failure of the Debtor or the Reorganized Debtor, as applicable, to make any payments due on an Allowed Class III Claim that is not cured on or within thirty (30 days) of receipt by the Reorganized Debtor of a written notice of default by the affected Class III creditor, such creditor may exercise all rights and remedies available under non-bankruptcy law for the collection of its entire Claim and/or seek appropriate relief in this Court.

4.3.3    Notwithstanding any provision in the Plan to the contrary, nothing shall (i) affect the ability of a Creditor with an Allowed Class III Claim to pursue to the extent allowed by non-bankruptcy law any non-Debtor for any liabilities that may be related to any tax liabilities owed by the Debtor to such Allowed Class III creditor; and (ii) affect the rights to assert setoff or recoupment and such rights are expressly preserved.

{00944026.4}

4.3.4    Nothing in this Article 4.3 prohibits the Debtor from refinancing, selling, or otherwise disposing of the any real or personal property encumbered by a Lien in favor of the applicable Class III Creditor.

4.3.5    Nothing in this Article 4.3 impairs or prohibits the Debtor or Reorganized Debtor from pursuing any objection to the Claim of any Class III Creditor including, without limitation, to the validity, priority, extent, or amount of such Claim.

4.3.6    Until the applicable personal or real property is sold or the Class III Claim is satisfied in full, each Class III Creditor shall retain its Liens to secure the Class III Creditor's Claim or that portion of the Class III Creditor's Claim that is a Secured Claim as determined under Article 4.3 of the Plan.  Such Liens shall have the same priority and encumber the same property as existed immediately before the Petition Date.

4.3.7    **This Class III is Impaired.**

4.4.    **Class IV**. Class IV shall consist of the Allowed Claims of unsecured creditors.  The Debtor estimates that the Unsecured Claims against it have an aggregate face amount of $48,486.24.  *See* DN 1.

4.4.1    <u>**Treatment of Claim**</u>.  In full and final satisfaction of all Allowed Class IV Claims and such Claim's Loan Documents (if any), each Holder of an Allowed Class IV Claim shall receive the full amount of its Allowed Class IV Claim plus interest accruing at the federal judgment interest rate in three (3) consecutive equal annual payments, with the first annual payment coming due on the first business day of the third (3d) month after the first anniversary of the Effective Date and annually thereafter.  All annual payments shall be distributed to Holders of Allowed Unsecured Claims in Class IV on a Pro Rata basis.

4.4.2.    Notwithstanding anything to the contrary contained in this Plan, the Reorganized Debtor may prepay any Allowed Class IV Claim without penalty of any kind or nature.

4.4.3    Except as otherwise specifically reserved in this Plan, all Avoidance Actions against Holders of Allowed Class IV Claims, who vote in favor of the Plan, are waived and released.

{00944026.4}

    4.4.4 **This Class IV is Not Impaired.**

  4.5  **Class V**. Class V consists of Allowed Interests in the Debtor. Illyssa Fogel owns one hundred percent (100%) of the Debtor's issued and outstanding stock and is the sole member of this Class V. The Holders of Allowed Interests shall retain their Allowed Interests in the Reorganized Debtor in the same percentages as held prior to the Petition Date.

    4.5.1 **This Class V is Not Impaired.**

**ARTICLE V**
**IMPLEMENTATION OF THE PLAN**

  5.1  **FUNDING OF THE PLAN.**  The Debtor reasonably believes that ongoing operations shall be sufficient to fund Debtor's operations. However, other sources of cash will be necessary to fully fund the Plan and may be explored and utilized by the Debtor to the extent that any addition cash infusions are necessary or desirable in later years to meet the obligations of the Plan. To the extent additional monies are needed, it is contemplated that the Debtor may obtain interest-bearing loan(s), which shall be evidenced by a promissory note, and may be on a secured or unsecured basis. The Debtor anticipates that if traditional loans are unavailable, the Holders of Class V Claims will provide shareholder loans. To the extent that loans are required or desirable as a consequence of this Plan, all such loans are authorized and approved on terms and conditions satisfactory to Debtor in its sole and unfettered discretion. Any refinancing of the Debtor's real property shall not accelerate the Debtor's obligations under Article IV.

  5.2  **CORPORATE GOVERNANCE**. Consistent with 11 U.S.C. § 1123(a)(6) and upon the Effective Date, the Debtor shall amend its articles of incorporation or corporate charter to include the following statement: "Until the date that is three (3) years after the Effective Date (defined in the Plan (defined herein )) of that certain *Subchapter V Plan of Reorganization* [DN ___] (the "Plan"), confirmed by the United States Bankruptcy Court for the District of Nevada, on [Date] in In re STOHO Enterprises, Inc., Case No. 22-50151-nmc, the Corporation shall not issue or authorize the issuance of any non-voting securities of the Corporation."

{00944026.4}

25

In addition, the Reorganized Debtor shall be authorized to file and record a statement regarding its real estate, as provided under applicable law, in the applicable recording offices(s) reflecting the prepetition merger of LLC with and into the Debtor.

5.3    **TAX MATTERS**.  On an after the Effective Date, the Debtor is authorized to, in its sole and unfettered discretion, obtain tax and accounting advice and implement such advice.

5.4.    **PLAN PROJECTIONS**.  The Debtor has attached as **Exhibit 5.4** its summary of post-confirmation financial projections for the life of the Plan, which were prepared by the Debtor.  The Debtor's plan projections represent the Debtor's best estimate of its income and expenses after the Confirmation Date.  They are not a guaranty of any actual outcome or that the Reorganized Debtor's actual performance will be in-line with the projections. Events outside of the Debtor's control could cause the Debtor's actual post-petition performance to differ from the Plan projections.  These events include, without limitation, changes in the current economic environment, litigation, increased costs, inability to attract new customers, continued Pandemic difficulties, labor shortages, and/or changes due to the political and regulatory environment. Actual post-confirmation performance may vary from the plan projections.

5.5.    **POST-EFFECTIVE DATE MANAGEMENT**.  The Debtor contemplates that during the life of the Plan (as may be modified and confirmed), Ms. Fogel, the Debtor's sole owner, will continue to operate the Debtor's business.  As compensation for her services to the Debtor, Ms. Fogel will continue to reside in the Residence, which is adjacent to the Motel, rent-free and receive a salary equal to $1,000.00 per month.

5.6.    **POST-CONFIRMATION SEWER LINE REPAIRS**.    THE DEBTOR AND ITS AGENTS SHALL HAVE AND ARE HEREBY GRANTED AUTHORITY TO ENTER UPON REAL ESTATE OWNED OR CONTROLLED BY MOTEL LENDER OR EITHER OF THEM AND TO EFFECTUATE REPAIRS TO THE SHARED SEWER LINE; AND MOTEL LENDER, EACH OF THEM, THEIR AGENTS, AND ANY PERSON RECEIVING A COPY OF THIS PLAN AND THE CONFIRMATION ORDER ARE HEREBY ENJOINED FROM TAKING ANY ACTION WHATSOEVER TO (I) PROHIBIT OR IMPAIR THE DEBTOR, ITS AGENTS, OR ANY GOVERNMENTAL UNIT FROM TAKING ANY ACTION NECESSARY OR

{00944026.4}

APPROPRIATE TO REPAIR THE SHARED SEWER LINE AND/OR (II) PROHIBIT OR IMPAIR ANY GOVERNMENTAL UNIT OR AGENTS AND CONTRACTORS THEREOF FROM TAKING ANY ACTION NECESSARY OR APPROPRIATE TO INSTALL A DEDICATED SEWER LINE SERVICING DEBTOR'S REAL ESTATE.  To the extent that the Debtor or its agents enter upon Motel Lender's real property pursuant to this Article 5.5, the Debtor shall ensure that, to the extent reasonably possible or practicable, Motel Lender's real property shall be returned to the condition it was in prior to Debtor's or its agents' entry onto such real property.

5.7.   **SUBSTANTIAL CONSUMMATION OF PLAN**.  This Plan shall be deemed to have been substantially consummated on the Effective Date of the Plan.

5.8.   **VOTING AND ACCEPTANCE OF PLAN**

5.8.1   **Presumed Acceptance of the Plan**.   Classes IV and V are unimpaired under the Plan; and, thus, Classes IV and V are conclusively presumed to have accepted the Plan pursuant to section 1126(f).

5.8.2   **Presumed Rejection of the Plan**.   There are no Classes that are conclusively presumed to have rejected the Plan pursuant to section 1126(g).

5.8.3   **Voting Classes**.  Classes I through III of the Plan are Impaired under the Plan, and Holders of Claims or Interests in such Classes shall be entitled to vote to accept or reject the Plan.  Notwithstanding the forgoing, all Classes have been provided a ballot for accepting or rejecting the Plan and have had an opportunity to vote to accept or reject the Plan.

5.8.4   **Elimination of Vacant Classes**.  Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8).

5.8.5   **Cramdown**.  If necessary, the Debtor shall request confirmation of the Plan, as it may be modified from time to time, under section 1191(b).  The Debtor reserves the right to

{00944026.4}

1  modify the Plan to the extent, if any, that confirmation pursuant to section 1191(b) of the

2  Bankruptcy Code requires modification of the Plan.

3       5.9  **EXEMPTION FROM CERTAIN TRANSFER TAXES AND RECORDING FEES.** To the

4  fullest extent permitted by section 1146(a), any transfer from the Debtor to any entity under,

5  pursuant to, in contemplation of, or in connection with the Plan or through: (a) the issuance,

6  distribution, transfer or exchange of any debt, securities or other interest in the Debtor; (b) the

7  creation, modification, consolidation or recording of any mortgage, deed of trust or other security

8  interest, or the securing of additional indebtedness by such or other means; (c) the making,

9  assignment or recording of any lease or sublease; or (d) the making, delivery or recording of any

10  deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan,

11  including any deeds, bills of sale, assignments or other instrument of transfer executed in

12  connection with any transaction arising out of, contemplated by, or in any way related to the Plan,

13  shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or

14  similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform

15  Commercial Code filing or recording fee, regulatory filing or recording fee or other similar tax or

16  governmental assessment, and the appropriate state or local governmental officials or agents shall

17  forego the collection of any such tax or governmental assessment and to accept for filing and

18  recordation any of the foregoing instruments or other documents without the payment of any such

19  tax or governmental assessment.

20       5.10  **NO FURTHER APPROVALS.** The transactions contemplated by the Plan shall be

21  approved and effective as of the Effective Date without the need for any further state or local

22  regulatory approvals or approvals by any non-Debtor parties, and without any requirement for

23  further action by the Debtor.

24       5.11  **TERMINATION OF SUBCHAPTER V TRUSTEE.**

25       5.11.1  If the Plan is confirmed under section 1191(a), the Subchapter V

26  Trustee shall continue to exercise those powers and perform those duties specified in section 1183

27  through Substantial Consummation of the Plan at which point the Subchapter V Trustee's services

28  shall terminate.

{00944026.4}

5.11.2       If the Plan is confirmed under section 1191(b), the Subchapter V Trustee shall not be terminated until it has performed such duties as are described in sections 1183 and 1194(b) and such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date.

5.12    **PRE-EFFECTIVE DATE INJUNCTIONS OR STAYS**.  All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Subchapter V Case pursuant to sections 105 or 362 or otherwise that are in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

5.13    **PROFESSIONAL FEE CLAIMS**.  All services performed or expenses incurred by any Professional on behalf of the Debtor or the Reorganized Debtor with respect to the Subchapter V Case after the Confirmation Date, shall be Administrative Claims and shall not be subject to the prior review and approval of the Bankruptcy Court.  Notwithstanding any provision of the Bankruptcy Code or Rules, including, without limitation, Bankruptcy Rule 2016, after the Effective Date, no Professional shall be required to disclose payments from the Debtor or the Reorganized Debtor to the Bankruptcy Court or the United States Trustee.  All fees and expenses of the Debtor and the Reorganized Debtor arising after the Effective Date shall be billed directly to the Reorganized Debtor and the Bankruptcy Court shall only review that portion to which the Reorganized Debtor objects. The Reorganized Debtor shall pay the portion not objected to in accordance with the terms of the invoice.

5.14    **CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**.  Except as otherwise set forth in the Confirmation Order or as expressly waived by the Debtor in writing, the following conditions must be satisfied before the Effective Date (the "Conditions Precedent"):

5.14.1    The Bankruptcy Court shall have entered a Confirmation Order confirming the Plan in this Case without any material modifications of or additions to the terms, conditions, and liabilities set forth in this Plan; and no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

5.14.2    The Confirmation Order shall not have been stayed pending any appeal of the Confirmation Order.

{00944026.4}

5.14.3    There shall be no pending motion to dismiss or convert the Subchapter V Case or to appoint a Chapter 11 trustee or examiner.

5.14.4    The Debtor shall have sufficient Cash, in the Debtor's reasonable discretion, to pay all Allowed Administrative Claims and Allowed Priority Claims required to be paid under this Plan as of the Effective Date.

5.14.5  The dedicated sewer line servicing the Motel Property shall have been installed and is functioning.

5.15    **FAILURE OF A CONDITION PRECEDENT**.

5.15.1    If the Conditions Precedent are neither satisfied nor waived within ninety (90) days after entry of the Confirmation Order, the Confirmation Order and this Plan shall be null and void, unless the Debtor files a motion on or before such date requesting the Court extend the ninety (90) day period.

5.15.2    The Debtor may seek to withdraw this Plan at any time prior to the Effective Date by filing an appropriate motion with the Bankruptcy Court.  If the Court allows the Debtor to withdraw the Plan, it shall be null and void for all purposes.

## **ARTICLE VI**
### **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.1    **ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**.  Unless addressed in Article IV of this Plan or otherwise assumed or rejected by Final Order of the Bankruptcy Court, all executory contracts and unexpired leases of the Debtor which are either: (i) not expressly rejected or (ii) not the subject of a pending application to reject as of sixty (60) days after the Effective Date, shall be deemed assumed.  No Cure amount is due from the Debtor on or for any executory contract or unexpired lease.  Attached as **Exhibit 6.1** hereto is the Notice of Rejected Contracts (the "Rejection Notice"), which contains a list of those executory contracts and unexpired leases that the Debtor has determined will be rejected upon the Effective Date.

{00944026.4}

30

If the Debtor has not listed an executory contract or unexpired lease in its Schedules and, at any time within 60 days after the Effective Date (but before administrative closing of the Subchapter V Case) the Reorganized Debtor determines that it would be beneficial to assume such executory contract or unexpired lease, the Reorganized Debtor may file a motion to assume the executory contract or unexpired lease along with a proposed cure amount, and shall be entitled to assume the executory contract or unexpired lease on the terms set forth in the motion if no objection is filed within fourteen (14) days after service. If an objection is timely filed, the cure amount dispute provisions of Article VI shall apply.

6.2    **REJECTION CLAIMS**.  Any Creditor who has a Rejection Damages Claim must file a Proof of Claim before the Rejection Bar Date, failing which such Rejection Damages Claim shall be Disallowed in its entirety.  The solicitation of this Plan was sufficient notice informing any potential Creditor of this requirement.

6.3    **OBJECTIONS TO REJECTION CLAIMS**.  The Reorganized Debtor may file an objection to any Proof of Claim filed in accordance with Article 6.2 hereof on or before the later of (i) sixty (60) days after the filing of the Proof of Claim or (ii) the time set for the filing of objections in Article 7.1 hereof (including any extensions).  The objection will be resolved in accordance with Article VII.

6.4    **ASSUMPTION AND CURE PAYMENTS**.  All assumed executory contracts and unexpired leases shall be Cured by the Reorganized Debtor pursuant to section 6.5 hereof, unless other provisions have been agreed to by the Debtor and counter-party or as otherwise provided under the Plan. As long as the Reorganized Debtor complies with Article 6.5 hereof, all executory contract and unexpired lease counterparties must fulfill all contract and lease obligations and are enjoined from declaring a default for non-performance due to the bankruptcy or pre-assumption default.

6.5    **RESOLUTION OF CURE CLAIM DISPUTES**.  For each executory contract or unexpired lease to be assumed under this Article VI, the Debtor or the Reorganized Debtor shall deliver a written proposal to the contract counter-party not later than thirty (30) days after the Effective Date describing the method, timing and amount of any proposed Cure (each a "Cure

{00944026.4}

31

Notice"). The terms of the Cure set forth in Article 6.1 of this Plan shall be deemed to be a Cure Notice and the solicitation of this Plan was sufficient notice informing any potential contract counter-party of such Cure Notice. The Debtor's or Reorganized Debtor's proposal, as applicable, in the Cure Notice shall be binding upon, and deemed accepted and agreed by, the contract counter-party unless the contract counter-party delivers to the Debtor's or the Reorganized Debtor's counsel, within fourteen (14) days after receipt of the proposal, a written objection detailing all reasons for the counter-party's objection and setting forth a counter-proposal. Acceptance of the Cure proposed in any Cure Notice by a contract counter-party replaces and supersedes any Proof of Claim filed by or on behalf of such contract counter-party involving or related to the applicable assumed contract or lease. In the event that the dispute cannot be resolved, either party may petition the Bankruptcy Court to resolve the dispute through filing of a properly noticed motion. In the event that the Bankruptcy Court sets a Cure amount greater than the Cure amount proposed by the Debtor, the Debtor or the Reorganized Debtor shall have fourteen (14) days to Cure or reject the contract or lease by filing a notice of rejection on the docket in this Case and giving notice thereof to the affected Creditor (which may be through the Court's electronic case filing system).

      6.6    **PRELIMINARY ASSUMPTION PENDING CHALLENGES**. The assumption of a contract or lease under this Article does not prejudice the Debtor's or the Reorganized Debtor's right to challenge whether any contract or lease is an executory contract or unexpired lease, as opposed to a disguised security agreement. If the Debtor or the Reorganized Debtor challenges an assumed executory contract or unexpired lease, the Reorganized Debtor shall not be required to comply with the disputed portions of the executory contract or unexpired lease until a Final Order is entered resolving the dispute. If the dispute is not resolved in the Reorganized Debtor's favor, the Reorganized Debtor has the right to reject the executory contract or unexpired lease for a period of twenty-one (21) days after entry of a Final Order by filing a notice of rejection on the docket in the Subchapter V Case and sending notice thereof to the affected Creditor.

//

//

{00944026.4}

## ARTICLE VII
### OBJECTIONS TO CLAIMS

7.1.    **TIMING OF OBJECTIONS**.  The Debtor or the Reorganized Debtor may object to the allowance of any Claim, or the extent, validity, and enforcement of any security interest, whether listed on the Schedules filed by the Debtor or filed by any Creditor, on or before the later of (a) sixty (60) days from the date of filing of any Proof of Claim or (b) six (6) months after the Effective Date.

7.2    **EXTENT OF OBJECTIONS**.  As part of the objection process set forth in Article 7.1 hereof, and without limiting same, the Debtor and/or the Reorganized Debtor shall have the right to object to any Lien by adversary proceeding or otherwise.

7.3    **CLAIM DISPUTE RESOLUTION PROCEDURES**.  The Reorganized Debtor shall be authorized to resolve all Disputed Claims by withdrawing or settling objections thereto, or by litigating to judgment in the Bankruptcy Court the validity, nature, and/or amount thereof.  The Reorganized Debtor shall be entitled to mediate any Disputed Claim in its sole discretion, and the holder of any such Disputed Claim shall be required to mediate its claim in good faith. If the Reorganized Debtor agrees with the Holder of a Disputed Claim to compromise, settle, and/or resolve a Disputed Claim by granting such Holder an Allowed Claim, then the Reorganized Debtor may compromise, settle, and/or resolve such Disputed Claim without Bankruptcy Court approval.

7.4    **CLAIMS BAR DATE**.  Except (a) as provided herein or otherwise agreed and (b) provided that the late-filing Creditor has submitted a ballot with respect to this Plan, then any and all Proofs of Claim filed after the applicable Bar Date by such late-filing Creditor shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Date such late Claim has been deemed timely filed by a Final Order.  If a Creditor has filed a Proof of Claim after the applicable Bar Date and did not submit a ballot with respect to this Plan, then the Debtor or Reorganized Debtor must seek to Disallow such Claim consistent with the procedures contained in this Article VII.

//

{00944026.4}

33

## ARTICLE VIII

### PROVISIONS REGARDING DISTRIBUTIONS

8.1    **DISPUTED PAYMENTS**.  Notwithstanding anything in this Plan to the contrary, the Debtor or the Reorganized Debtor shall not be obligated to make any payments towards the Disputed portion of any Disputed Claim.  Except as otherwise provided herein, the Reorganized Debtor shall withhold any such payments, and, if the dispute is resolved in favor of the Claim Holder, the Reorganized Debtor shall make any missed distributions within thirty (30) days after entry of a Final Order determining the Claim.  Except as otherwise provided herein, if a Secured Claim is Disputed then upon escrowing the Disputed amount any Lien shall be transformed to the escrowed proceeds and the affected Creditor shall be and is hereby required to discharge its Lien.

8.2    **DELIVERY OF DISTRIBUTIONS IN GENERAL**. Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Allowed Interests shall be made by the Reorganized Debtor, in order of preference, (a) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtor after the date of any related Proof of Claim, (b) at the addresses set forth on the Proofs of Claim filed by such Holders of Claims, or (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Reorganized Debtor has not received a written notice of a change of address.  Except as set forth herein, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or similar legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Reorganized Debtor shall not incur any liability whatsoever on account of the delivery or calculation of any distributions under the Plan except for gross negligence or willful misconduct.  Notwithstanding anything to the contrary herein, the Reorganized Debtor shall not be obligated to make any distribution or periodic distribution required in this Plan if such amount is less than Twenty-Five and 00/100 Dollars ($25.00).

8.3    **ALLOCATION OF PAYMENTS**.  All distributions shall be allocated first to principal until the principal amount of the Claim is paid in full, next to interest if interest is Allowed in relation to the Claim, and, finally, to fees, costs and expenses if such are Allowed.

{00944026.4}

34

8.4    **COMPLIANCE WITH TAX REQUIREMENTS AND ALLOCATIONS**.  In connection with the Plan, to the extent applicable, the Reorganized Debtor shall be authorized to take all actions necessary or appropriate actions to comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms it believes are reasonable and appropriate. The Reorganized Debtor reserves the right, in their sole discretion, to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, other spousal awards, Liens, and encumbrances.  To the extent that, in the opinion of the Reorganized Debtor's tax professional(s), that its necessary or appropriate for a Reorganized Debtor to obtain federal tax identification or social security numbers (the "Tax Information") from any Creditor or Interest Holder and such Creditor or Interest Holder does not provide the Tax Information with thirty (30) days after written request, then such Creditor's or Interest Holder's Claim or Interest shall be Disallowed whether such request is prior to or after any applicable Bar Date.

8.5    **UNDELIVERABLE DISTRIBUTIONS AND NON-NEGOTIATED CHECKS**.  If any distribution to a Holder of a Claim is returned as undeliverable, no further distributions to such Holder of such Claim shall be made unless and until the Reorganized Debtor is notified of the then-current address of such Holder of the Claim, after which time future distributions shall be made to such Holder of the Claim without interest at such address.  If checks issued by a Reorganized Debtor on account of Claims are not negotiated within one hundred and twenty (120) days after the issuance of such check, the check shall be null and void.  Amounts in respect to undeliverable distributions and non-negotiated checks shall be held by the issuing Reorganized Debtor until (i) such distributions are claimed or (ii) ninety (90) days after the check is returned or voided due to non-negotiation, after which date all such undistributed and non-negotiated amounts shall revert to the Reorganized Debtor free of any restrictions thereon and the Claim of any Holder or successor to such Holder with respect to such distribution shall be discharged and forever barred,

{00944026.4}

notwithstanding federal or state escheat laws to the contrary.  Nothing contained herein shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

8.6    **FRACTIONAL PAYMENTS**.  Notwithstanding any other provision of the Plan to the contrary, payments of fractions of dollars shall not be required. Payment of fractions of dollars that would otherwise be distributed under the Plan shall be rounded to the lower whole number of dollars.

8.7    **INTEREST AND PENALTIES ON CLAIMS**. Unless otherwise specifically provided for in the Plan, the Confirmation Order, or required by applicable bankruptcy law, post-petition interest and penalties shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date that such Claim is satisfied in accordance with the terms of this Plan.

8.8    **PREPAYMENT**.  Any distribution required under this Plan may be prepaid, in whole or in part, in the sole and absolute discretion, of the Reorganized Debtor.

## ARTICLE IX
### EFFECT OF CONFIRMATION

9.1    **DISCHARGE OF INDEBTEDNESS**.

9.1.1    **Discharge under Section 1191(a)**.  If this Plan is confirmed under section 1191(a), except as otherwise explicitly provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims.  Except as otherwise provided in the Plan or the Confirmation Order, Confirmation shall, as of the Effective Date, discharge the Debtor from all Claims or other debts that arose before the Effective Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, and all debts of the kind specified in sections 502(g), 502(h), or 502(i), in each case whether or not a Proof of Claim is filed or deemed filed pursuant to section 501.

9.1.2    **Discharge under Section 1192(b)**.  If this Plan is confirmed under section 1191(b) as soon as practicable after completion of the Reorganized Debtor's payments due

{00944026.4}

36

during the first three (3) years of the Plan, the Court shall grant the Debtor and Reorganized Debtor a discharge of all debts provided in section 1141(d)(1)(A) and allowed under section 503 (the "Discharge Order"). Notwithstanding the forgoing, the Court shall not grant the Debtor or the Reorganized Debtor a discharge of any debt for which the last payment is due after the first three (3) years of the Plan, or (ii) to the extent section 523(a) is applicable to a corporate debtor, a debt of the kind specified in section 523(a).

        9.1.3  **Effect of Discharge**. Upon the Effective Date if the Plan is confirmed under section 1191(a) or upon entry of a Discharge Order if the Plan is confirmed under section 1191(b), and except as otherwise provided in the Plan or the Confirmation Order, all Persons and Entities shall be precluded from asserting against the Debtor, the Reorganized Debtor, or its respective successors or property, any other or further Claims, demands, debts, rights, causes of action, liabilities, or equity interests based upon any act, omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination, as of the Effective Date, of a discharge of all such Claims and other debts and liabilities against the Debtor or Reorganized Debtor pursuant to sections 524 and 1192, and such discharge will void any judgment obtained against the Debtor or Reorganized Debtor at any time, to the extent that such judgment relates to a discharged debt.

        9.2  **1191(C)(3)(B) PROVISION**. For the purposes of section 1191(c)(3)(B) and in the event that payments to any creditor are not made as provided in Article IV of the Plan to such creditor, then the creditor may make a written demand (the "Demand Notice") to the Reorganized Debtor which, at a minimum, must clearly and expressly identify the payments that the Creditor asserts were not made; and a copy of the Demand Notice shall be provided to Reorganized Debtor's counsel by email at jstockdale@schaferandweiner.com. The Reorganized Debtor shall have sixty (60) days from the date the Demand Notice is received by the Reorganized Debtor to (a) cure the payment default or (b) make other mutually agreeable arrangements with the Creditor to resolve the identified payment default. If the payment default identified in the Demand Notice is not cured or not otherwise resolved as provided under the previous sentence, then the affected Creditor may

{00944026.4}

seek to reopen the Subchapter V Case and seek appropriate remedies provided under the Bankruptcy Code; provided, however, that if the Reorganized Debtor cure such the payment default identified in the Demand Notice prior to the Bankruptcy Court entering an order authorizing any relief, the identified payment default shall be deemed cured and the Subchapter V Case shall be immediately closed.

9.3    **INJUNCTIONS**. Except as otherwise provided in the Plan or the Confirmation Order, all persons or entities who have held, hold or may hold Claims, Interests, Causes of Action, or liabilities that:  (i) are subject to compromise and settlement pursuant to the terms of the Plan (as modified and/or confirmed); or (ii) are otherwise stayed or terminated pursuant to the terms of the Plan (as modified and/or confirmed), are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner any action or other proceeding, including on account of any Claims, Interests, Causes of Action, or liabilities that have been compromised or settled against the Debtor or any Person or entity so released or exculpated (or the property or estate of any Person or entity, directly or indirectly, so released or exculpated) on account of or in connection with or with respect to any released, settled, compromised, or exculpated Claims, Interests, Cause(s) of Action or liabilities.

9.4    **WAIVER OF CLAIMS**.   Except as to any taxing authority or as otherwise provided in the Plan (as modified and/or confirmed), confirmation shall also constitute a waiver by Creditors of any right that they may have, unless supported by a written guarantee (or similar document), to seek to enforce their Claims against the Interest Holder, whether pursuant to an "alter ego" claim, a claim for "piercing the veil" of the Debtor's or the Reorganized Debtor's corporate existence, or other similar Claim, and whether or not such Creditor is the Holder of an Allowed Claim against the Debtor.

9.5    **EXCULPATION**.  Except as otherwise provided in the Plan (as modified and/or confirmed), no Person that is acting or has acted for or on behalf of the Debtor or Reorganized Debtor shall have or incur, and is hereby released and exculpated from, any Claim, obligation, Cause of Action, or liability for any exculpated Claim, except for gross negligence or willful misconduct. The Debtor and the Reorganized Debtor (and their respective affiliates, agents, directors, shareholders, managers, partners, officers, employees, and advisors) have, and on the Effective Date shall be

{00944026.4}

38

1    deemed to have, participated in compliance with the applicable provisions of the Bankruptcy Code

2    and shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing

3    the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the

4    Plan.

5        9.6    **RETENTION AND ENFORCEMENT AND RELEASE OF CAUSES OF ACTION**.  Except

6    as otherwise provided in the Plan, or in any document, instrument, release, or other agreement

7    entered into in connection with the Plan, in accordance with section 1123(b), the Debtor and its

8    Estate expressly reserves all rights to retain and prosecute any and all Claims and Causes of Action

9    (the "Retained Causes of Action").  The Retained Causes of Action include, without limitation, all

10   claims and Causes of Action against (i) the Motel Lender, either of them, Motel Lender's

11   predecessor-in-interest, Humboldt County, the Health Department, and all other Persons and

12   Governmental Units for actions or inactions involving or related to the shared sewer line, which

13   was cut and capped by Motel Lender in July 2021, and the closure of the Motel as a result thereof

14   in August 2021 and (ii) Kaempfer Crowell and Richard G. Campbell, Jr., Esq. for malpractice in

15   connection with STOHO Enterprises, Inc., et al. v. Ty Albisu, et al., Case No. CV 0022777 (6th

16   Jud. Dist., State of Nevada). The Reorganized Debtor shall have sole authority and responsibility

17   for investigating, analyzing, commencing, prosecuting, litigating, compromising, collecting, and

18   otherwise administering (or decline to do any of the foregoing) any or all of the Retained Causes

19   of Action pursuant to the terms of the Plan.  No preclusion doctrine, including the doctrines of res

20   judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or

21   otherwise), or laches, shall apply to any or all of the Retained Causes of Action upon, after, or as

22   a consequence of Confirmation or the occurrence of the Effective Date.

23       9.7    **PROTECTIONS AGAINST DISCRIMINATORY TREATMENT**.  Consistent with section

24   525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Persons,

25   including Governmental Units (including, without limitation, the California Franchise Tax Board),

26   shall not discriminate against the Reorganized Debtor or deny, revoke, suspend, or refuse to renew a

27   license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate

28   {00944026.4}

39

with respect to such a grant against, the Reorganized Debtor or other Person with whom the Reorganized Debtor has been associated, solely because the Debtor has been a debtor under Chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor is granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

## ARTICLE X
### JURISDICTION OF THE COURT

10.    **JURISDICTION**.  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Subchapter V Case and the Plan, including without limitation, jurisdiction with respect to:

A.    The classification of the Claim of any Creditor and the re-examination of Claims which have been Allowed for purposes of voting, and the determination of such objections as may be filed to Claims.  The failure by the Debtor or the Reorganized Debtor to object to, or to examine any Claim for the purposes of voting, shall not be deemed to be a waiver of any right to object to, or reexamine the Claim in whole or in part.  Furthermore, the fact that this Plan has provided a treatment for the benefit of a particular Creditor shall not in any way be deemed to be a waiver of any right to object to or re-examine the Claim or any secured interest whether by mortgage or otherwise which secures such Claim, in whole or in part.

B.    The determination of all questions and disputes regarding title to the assets of the Estate, and all Causes of Action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between the Debtor and the Reorganized Debtor or any other party.

C.    The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan.

{00944026.4}

D.      The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code and as provided as Article 12.5 of the Plan.

E.      The enforcement and interpretation of the terms and conditions of this Plan and the entry of orders in aid of confirmation of this Plan.

F.      The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor, the Reorganized Debtor, or any party-in-interest, and to impose such limitations, restrictions, terms, and conditions of such title, rights, and powers as this Court may deem necessary to accomplish its obligations under the Plan.

G.      The review and approval of all Professional fee applications for services rendered prior to the Confirmation Date and the review of any Professional Fee Claims for services rendered in connection with the Plan after the Confirmation Date, to the extent that the Debtor or the Reorganized Debtor dispute all or a portion thereof.

H.      The right to pursue any Avoidance Actions.

I.      The right to make a determination as to the rights and interest of the Debtor, the Reorganized Debtor, or any third party in any assets in the Debtor's or the Reorganized Debtor's possession or any asset in which the Debtor or the Reorganized Debtor claims ownership.

J.      The entry of an order determining the validity of any Lien.

K.      The entry of an order concluding and terminating this Subchapter V Case.

## ARTICLE XI
### TITLE TO PROPERTY

11.1    **VESTING OF PROPERTY**.  Title to all property of the Debtor shall vest in the respective Reorganized Debtor upon the Effective Date of the Plan.  The Debtor shall be discharged from its status as a debtor and the affairs and business of such Reorganized Debtor shall thereafter be conducted without Court involvement except as may be governed by the Plan.

//

//

//

{00944026.4}

11.2    **AVOIDANCE ACTIONS**.  Unless otherwise set forth in this Plan, on the Confirmation Date, the right to pursue any and all Avoidance Actions shall transfer to and vest in the Reorganized Debtor.  Potential Avoidance Actions are identified in the Schedules filed by the Debtor.  *See* DN 1.

### ARTICLE XII
### MISCELLANEOUS PROVISIONS

12.1    **COMPUTATION OF TIME**.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006 will apply.

12.2    **CONFIRMATION ORDER CONTROLS**.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

12.3    **GOVERNING LAW AND JURISDICTION**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Nevada shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan. The Plan, as confirmed, and any agreements, documents, and instruments executed in connection with the Plan shall be deemed to have been fully executed within the State of Nevada.

12.4    **INCORPORATION OF EXHIBITS**.  All Exhibits and any Plan Supplement are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit and any Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy Court's website for a fee at https://ecf.nvb.uscourts.gov.    The Exhibits and/or Plan Supplement may also be requested in writing from the Debtor's counsel.  All Exhibits and any Plan Supplement may be revised prior to the Effective Date by the filing of the revised Exhibits and revised Plan Supplement with the Bankruptcy Court, so long as the revised Exhibits and revised Plan Supplement are substantially in conformance with the terms of this Plan.  The Exhibits and any Plan Supplement are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court shall constitute an

{00944026.4}

1  approval of the Exhibits and any Plan Supplement.  Any Exhibit referenced herein which is not

2  attached to this Plan shall be included in a Plan Supplement to be filed with the Court prior to the

3  hearing on confirmation of this Plan.

4        12.5  **MODIFICATIONS TO THE PLAN**.  The Debtor may amend or modify the Plan and

5  any schedule or supplement hereto, at any time prior to the Effective Date in accordance with the

6  Bankruptcy Code, Bankruptcy Rules, or any applicable court order.  The Debtor expressly reserves

7  its right to alter, amend, or modify materially this Plan, one or more times, after Confirmation, as

8  provided by section 1193 and, to the extent necessary, may initiate proceedings in the Bankruptcy

9  Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any

10 inconsistencies in the Plan or the Confirmation Order, in such matters as may be necessary to carry

11 out the purposes and intent of the Plan.  A Holder of a Claim or Interest that has accepted the Plan

12 shall be deemed to have accepted the Plan, as altered, amended, modified, or supplemented, if the

13 proposed alteration, amendment, modification, or supplement does not materially and adversely

14 change the treatment of the Claim or Interest of such Holder.

15       12.6  **COURTS OF COMPETENT JURISDICTION**.  If the Bankruptcy Court abstains from

16 exercising, declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter

17 arising out of the Plan or in this Subchapter V Case, such abstention, refusal, or failure of

18 jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of

19 jurisdiction by any other court having competent jurisdiction with respect to such matter.  In the

20 event that this Subchapter V Case has been closed and except as otherwise required by this Plan,

21 as may be modified and confirmed, claims involving or related to a breach of the confirmed Plan

22 may be brought only in a Court of the State of Nevada.

23       12.7  **PAYMENT OF STATUTORY FEES**.  All fees payable pursuant to section 1930 of title

24 28 of the United States Code, if any, as determined by the Bankruptcy Court at the Confirmation

25 Hearing, shall be paid on the Effective Date, and as appropriate thereafter.  Notwithstanding the

26 foregoing, if any Creditor or other party-in-interest reopens this Subchapter V Case after it has

27 been first closed, then such party-in-interest shall (i) be solely responsible for all sums required

28 pursuant to 28 U.S.C. §1930(a)(6), (ii) timely pay all such required pursuant to 28 U.S.C.

{00944026.4}

43

1   §1930(a)(6), and (iii) indemnify and hold harmless the Reorganized Debtor against any and all

2   expenses, including, without limitation, reasonable attorneys' fees, incurred as a result of

3   reopening of the Subchapter V Case.

4         12.8   **NOTICE**.  To be effective, any and all notices, requests and demands to or upon the

5   Debtor or the Reorganized Debtor shall be in writing and, unless otherwise expressly provided

6   herein, shall be deemed to have been duly given or made when actually delivered or, in the case

7   of notice by electronic transmission, when received and telephonically confirmed.  The party

8   giving the Debtor or the Reorganized Debtor any notice, request, or demand must also provide a

9   copy of such notice, request, or demand to the Debtor's or the Reorganized Debtor's counsel by

10  email, which email copy shall be deemed or considered notice to the Debtor or Reorganized

11  Debtor.   In the event that the Debtor or Reorganized Debtor change counsel, Debtor or

12  Reorganized Debtor, as the case may be, shall file a notice on the docket in the Subchapter V Case

13  informing the Creditors of the change in counsel and serve such notice on the Creditor Matrix.

14        12.9   **RESERVATION OF RIGHTS**.   The filing of the Plan, any statement or provision

15  contained in the Plan, or the taking of any action by the Debtor with respect to the Plan, shall not

16  be deemed to be an admission or waiver of any rights of the Debtor or Reorganized Debtor with

17  respect to any Holders of Claims against or Interests in the applicable Debtor.

18        12.10   **NO WAIVER**.  Neither the failure of a Debtor to list a Claim or Interest in such

19  Debtor's Schedules, the failure of a Debtor to object to any Claim, Administrative Claim or Interest

20  for purposes of voting, the failure of the Debtor to object to a Claim, Administrative Claim, or

21  Interest prior to the Confirmation Date or the Effective Date, nor the failure of the Debtor to assert

22  a Retained Cause of Action prior to the Confirmation Date or the Effective Date shall, in the

23  absence of a legally-effective express waiver or release executed by the Debtor with the approval

24  of the Bankruptcy Court, if required, and with any other consents or approvals required under the

25  Plan, be deemed a waiver or release of the right of the Debtor or its respective successors, either

26  before or after solicitation of votes on the Plan, the Confirmation Date or the Effective Date, to

27  (a) object to or examine such Claim, Administrative Claim or Interest, in whole or in part, or

28  (b) retain or either assign or exclusively assert, pursue, prosecute, utilize, or otherwise act or

{00944026.4}

44

enforce any Retained Cause of Action against the Holder of such Claim, Administrative Claim, or Interest.

12.11 **RELEASE OF LIENS**. The Debtors, Reorganized Debtors, and all parties-in-interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan. This shall include without limitation any execution by a Debtor or Reorganized Debtor of UCC financing statements and the execution by any Creditor of any UCC or mortgages, releases, or terminations.

12.12 **SETOFFS AND COUNTERCLAIMS**. No Creditor (including without limitation a Person or entity that becomes a Creditor as a result of a rejection of a contract) shall be allowed to set off a Claim against an obligation to the Debtor or Reorganized Debtor arising in connection with a different contract. Unless expressly asserted in the Subchapter V Case through the filing of a Proof of Claim, all setoffs and counterclaims are waived pursuant to this Plan. The terms of this Article 12.12 shall not apply to any taxing authority.

12.13 **COMPROMISE OF LITIGATION**. The Reorganized Debtor shall have the right to commence, continue, amend, or compromise all Causes of Action (including without limitation any Avoidance Action) available to the Debtor, its Estate, the Debtor-in-Possession, or the Reorganized Debtor, whether or not those causes of action were the subject of a lawsuit as of the Confirmation Date.

12.14 **SEVERABILITY**. Any provision of this Plan which is finally determined to be invalid or unenforceable in any jurisdiction or under any circumstance shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or rendering unenforceable the remaining provisions hereof in such jurisdiction or under such circumstances. Further, if any provision is so held to be illegal, invalid, or unenforceable, such court shall add in lieu thereof a provision as similar in terms to such provision as is possible that is legal, valid, and enforceable.

12.15 **SUCCESSORS AND ASSIGNS**. This Plan and the Confirmation Order shall inure to the benefit of, and be binding upon, all parties-in-interest and their respective successors and assigns.

{00944026.4}

[Signature Page to Subchapter V Plan of Reorganization]

Respectfully Submitted,

**STOHO ENTERPRISES, INC.,**
a Nevada corporation

By: _____
    Illyssa I. Fogel
Its:    Sole Shareholder

Dated:  April 5, 2022


**PREPARED BY:**

SCHAFER AND WEINER, PLLC

/s/ John J. Stockdale, Jr.
MICHAEL E. BAUM (MI P29446)
JOHN J. STOCKDALE, JR. (MI P71561)
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
(248) 540-3340
jstockdale@schaferandweiner.com

FLETCHER & LEE

/s/ Elizabeth Fletcher, Esq.
ELIZABETH FLETCHER, ESQ.
CECILIA LEE, ESQ.

{00944026.2}

**Exhibit 2.3**

**STOHO Enterprises, Inc.**

**Liquidation Analysis**

| | Fair Market Value | Liquidation Value | |
|---|---|---|---|
| Motel Property | $780,000[1] | $491,400[2] | |
| Residence | $138,700[3] | $87,381[4] | |
| Vacant Land (APN 03-0441-09) | $19,786[5] | $13,465[6] | |
| Vacant Land (APN 03-672-05) | $3,000[7] | $1,890[8] | |
| California Property | $701,000[9] | $441,630[10] | |
| FFE | $60,000[11] | $30,000 | |
| Cash[12] | $9,019 | $9,019 | |
| Claims | Unknown | Unknown | |
| **Total Assets** | **$1,711,505** | **$1,074,785** | |

| | Amount | Recovery | % Recovery |
|---|---|---|---|
| Class I: Motel Lender[13] | $483,623[14] | $483,623 | 100% |
| Class II: California Lender | $161,200[15] | $161,200 | 100% |
| Class III: Secured Tax Creditors | $39,409[16] | $39,409 | 100% |
| Class IV: Unsecured Creditors | $48,486[17] | $48,486 | 100% |
| Class V: Equity | $978,787 | $342,067 | |

[1] Based on Debtor's estimate of value prior to closure of Motel and does not account for any valuation decrement occasioned by the cutting or capping of the shared sewer line.
[2] Forced liquidation value is approximately 63% of the real property's fair market value.
[3] Based on Zillow estimate. This estimate does not account for any valuation decrement occasioned by the cutting or capping of the shared sewer line.
[4] Forced liquidation value is approximately 63% of the real property's fair market value.
[5] Taxable value. This value does not account for any valuation decrement occasioned by the cutting or capping of the shared sewer line.
[6] Forced liquidation value is approximately 63% of the real property's fair market value.
[7] Taxable value. This value does not account for any valuation decrement occasioned by the cutting or capping of the shared sewer line.
[8] Forced liquidation value is approximately 63% of the real property's fair market value.
[9] Based on Zillow estimate.
[10] Forced liquidation value is approximately 63% of the real property's fair market value.
[11] Debtor's estimate.
[12] As of November 30, 2021. *See* DN 107.
[13] First priority position mortgage on Real Property pursuant to applicable state law. See Proof of Claim No. 2.
[14] Based on Notice of Default, recorded on November 30, 2021. This liquidation analysis assumes the validity, amount, and priority of Motel Lender's Claim in the amount recited in its Notice of Default. The Debtor disputes the validity of Motel Lender's Claim. When finally Allowed, Motel Lender's Claim may be significantly reduced or Disallowed entirely.
[15] Based on amount of final balloon payment required under the applicable Loan Documents.
[16] *See* DN 1.
[17] Id.

{00941392.3}

# Exhibit 5.4

## Plan Projections

**Plan Projections**

| | June 2022* | July 2022 | August 2022 | September 2022 | October 2022 | November 2022 | December 2022 | January 2023 | February 2023 | March 2023 | April 2023 | May 2023 | Year 1 Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| starting cash $ | 8,269.72 | 8,019.72 | 7,769.72 | 7,519.72 | 4,034.10 | 2,974.95 | 1,915.80 | 430.18 | 71.03 | 11.88 | 1,526.26 | 5,467.11 | |
| **Income** | | | | | | | | | | | | | |
| Rental Income | | | | | | | | | | | | | |
| Motel $ | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 96,000.00 |
| Madden $ | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 36,000.00 |
| Total Income $ | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 132,000.00 |
| Total Cash $ | 19,269.72 | 19,019.72 | 18,769.72 | 18,519.72 | 15,034.10 | 13,974.95 | 12,915.80 | 11,430.18 | 11,071.03 | 11,011.88 | 12,526.26 | 16,467.11 | 180,010.19 |
| **Expenses (General)** | | | | | | | | | | | | | |
| Insurance $ | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000.00 |
| Property/Room Tax $ | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 24,000.00 |
| Management / Payroll $ | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 24,000.00 |
| Utilities $ | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 15,000.00 |
| Repairs/Maintenance $ | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000.00 |
| Total Expenses $ | 6,250.00 | 6,250.00 | 6,250.00 | 6,250.00 | 6,250.00 | 6,250.00 | 6,250.00 | 6,250.00 | 6,250.00 | 6,250.00 | 6,250.00 | 6,250.00 | 75,000.00 |
| **Net Operating Income** $ | 13,019.72 | 12,769.72 | 12,519.72 | 12,269.72 | 8,784.10 | 7,724.95 | 6,665.80 | 5,180.18 | 4,821.03 | 4,761.88 | 6,276.26 | 10,217.11 | |
| **Expenses (Note/Interest)** | | | | | | | | | | | | | |
| Class I Claim (Motel Note) $ | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Class II Claim (Madden Note) $ | - | - | - | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 7,282.35 |
| Group I Claims | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | | | 45,000.00 |
| Group II/Class III Claims $ | - | - | - | 2,426.47 | - | - | 2,426.47 | - | - | 2,426.47 | - | - | 7,279.41 |
| Class IV Claims $ | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Plan Expenses $ | 5,000.00 | 5,000.00 | 5,000.00 | 8,235.62 | 5,809.15 | 5,809.15 | 8,235.62 | 5,809.15 | 5,809.15 | 3,235.62 | 809.15 | 809.15 | 59,561.76 |
| **Net** $ | 8,019.72 | 7,769.72 | 7,519.72 | 4,034.10 | 2,974.95 | 1,915.80 | (1,569.82) | (628.97) | (988.12) | 1,526.26 | 5,467.11 | 9,407.96 | |
| **Owner's Ccontribution/Loan** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,000.00 | $700 | $1,000 | $0 | $0 | $0 | 3,700.00 |
| **Ending Cash** $ | 8,019.72 | 7,769.72 | 7,519.72 | 4,034.10 | 2,974.95 | 1,915.80 | 430.18 | 71.03 | 11.88 | 1,526.26 | 5,467.11 | 9,407.96 | |

Assumptions and notes
1 Assume a June 1, 2023 Effective Date
2 Assumes a June 1, 2023 reopening of the Motel and installation of dedicated sewer line
3 Assumes no payments for equity management during year 1.
4 the "Management/payroll" line includes payroll and associated taxes and expenses.

Plan Projections

| | June 2023* | July 2023 | August 2023 | September 2023 | October 2023 | November 2023 | December 2023 | January 2024 | February 2024 | March 2024 | April 2024 | May 2024 | Year 2 Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| starting cash | $9,407.96 | 9,297.34 | 11,613.19 | 12,855.40 | 1,009.14 | 2,251.35 | 3,493.56 | 2,309.30 | 3,551.51 | 4,793.72 | 3,609.46 | 4,851.67 | |
| **Income** | | | | | | | | | | | | | |
| Rental Income | | | | | | | | | | | | | |
| Motel | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 102,000.00 |
| Madden | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 39,000.00 |
| Total Income | 11,750.00 | 11,750.00 | 11,750.00 | 11,750.00 | 11,750.00 | 11,750.00 | 11,750.00 | 11,750.00 | 11,750.00 | 11,750.00 | 11,750.00 | 11,750.00 | 141,000.00 |
| Total Cash | 21,157.96 | 21,047.34 | 23,363.19 | 24,605.40 | 12,759.14 | 14,001.35 | 15,243.56 | 14,059.30 | 15,301.51 | 16,543.72 | 15,359.46 | 16,601.67 | 210,043.60 |
| **Expenses (General)** | | | | | | | | | | | | | |
| Insurance | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 6,300.00 |
| Property/Room Tax | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 27,000.00 |
| Management / Payroll | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 36,000.00 |
| Utilities | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 16,200.00 |
| Repairs/Maintenance | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 12,000.00 |
| professional fees | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000.00 |
| Total Expenses | 8,625.00 | 8,625.00 | 8,625.00 | 8,625.00 | 8,625.00 | 8,625.00 | 8,625.00 | 8,625.00 | 8,625.00 | 8,625.00 | 8,625.00 | 8,625.00 | 103,500.00 |
| **Net Operating Income** | 12,532.96 | 12,422.34 | 14,738.19 | 15,980.40 | 4,134.14 | 5,376.35 | 6,618.56 | 5,434.30 | 6,676.51 | 7,918.72 | 6,734.46 | 7,976.67 | |
| **Expenses (Note/Interest)** | | | | | | | | | | | | | |
| Class I Claim (Motel Note) | - | - | 1,073.64 | 1,073.64 | 1,073.64 | 1,073.64 | 1,073.64 | 1,073.64 | 1,073.64 | 1,073.64 | 1,073.64 | 1,073.64 | 10,736.40 |
| Class II Claim (Madden Note) | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 9,709.80 |
| Group I Claims | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Group II/Class III Claims | 2,426.47 | - | - | 2,426.47 | - | - | 2,426.47 | - | - | 2,426.47 | - | - | 9,705.88 |
| Class IV Claims | - | - | - | 16,162.00 | - | - | - | - | - | - | - | - | 16,162.00 |
| Total Plan Expenses | 3,235.62 | 809.15 | 1,882.79 | 20,471.26 | 1,882.79 | 1,882.79 | 4,309.26 | 1,882.79 | 1,882.79 | 4,309.26 | 1,882.79 | 1,882.79 | 46,314.08 |
| **Net** | 9,297.34 | 11,613.19 | 12,855.40 | (4,490.86) | 2,251.35 | 3,493.56 | 2,309.30 | 3,551.51 | 4,793.72 | 3,609.46 | 4,851.67 | 6,093.88 | |
| **Owner's Ccontribution/Loan** | $0.00 | $0.00 | $0.00 | $5,500.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | 5,500.00 |
| **Ending Cash** | 9,297.34 | 11,613.19 | 12,855.40 | 1,009.14 | 2,251.35 | 3,493.56 | 2,309.30 | 3,551.51 | 4,793.72 | 3,609.46 | 4,851.67 | 6,093.88 | |

**Plan Projections**

| | June 2024* | July 2024 | August 2024 | September 2024 | October 2024 | November 2024 | December 2024 | January 2024 | February 2024 | March 2024 | April 2024 | May 2024 | Year 3 Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| starting cash | $6,093.88 | 4,834.62 | 6,001.83 | 7,169.04 | 747.78 | 1,914.99 | 3,082.20 | 1,822.94 | 2,990.15 | 4,157.36 | 2,898.10 | 4,065.31 | |
| **Income** | | | | | | | | | | | | | |
| Rental Income | | | | | | | | | | | | | |
| Motel | 8,750.00 | 8,750.00 | 8,750.00 | 8,750.00 | 8,750.00 | 8,750.00 | 8,750.00 | 8,750.00 | 8,750.00 | 8,750.00 | 8,750.00 | 8,750.00 | 105,000.00 |
| Madden | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 39,000.00 |
| Total Income | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 144,000.00 |
| Total Cash | 18,093.88 | 16,834.62 | 18,001.83 | 19,169.04 | 12,747.78 | 13,914.99 | 15,082.20 | 13,822.94 | 14,990.15 | 16,157.36 | 14,898.10 | 16,065.31 | 189,778.20 |
| **Expenses (General)** | | | | | | | | | | | | | |
| Insurance | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 6,600.00 |
| Property/Room Tax | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 28,800.00 |
| Management / Payroll | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 36,000.00 |
| Utilities | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 18,000.00 |
| Repairs/Maintenance | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 12,000.00 |
| professional fees | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | 6,000.00 |
| Total Expenses | 8,950.00 | 8,950.00 | 8,950.00 | 8,950.00 | 8,950.00 | 8,950.00 | 8,950.00 | 8,950.00 | 8,950.00 | 8,950.00 | 8,950.00 | 8,950.00 | 107,400.00 |
| **Net Operating Income** | 9,143.88 | 7,884.62 | 9,051.83 | 10,219.04 | 3,797.78 | 4,964.99 | 6,132.20 | 4,872.94 | 6,040.15 | 7,207.36 | 5,948.10 | 7,115.31 | |
| **Expenses (Note/Interest)** | | | | | | | | | | | | | |
| Class I Claim (Motel Note) | $1,073.64 | $1,073.64 | $1,073.64 | $1,073.64 | $1,073.64 | $1,073.64 | $1,073.64 | $1,073.64 | $1,073.64 | $1,073.64 | $1,073.64 | $1,073.64 | 12,883.68 |
| Class II Claim (Madden Note) | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 9,709.80 |
| Group I Claims | - | - | - | - | - | - | - | - | - | - | - | - | |
| Group II/Class III Claims | $2,426.47 | - | - | $2,426.47 | - | - | $2,426.47 | - | - | $2,426.47 | - | - | 9,705.88 |
| Class IV Claims | - | - | - | $16,162.00 | - | - | - | - | - | - | - | - | 16,162.00 |
| Total Plan Expenses | 4,309.26 | 1,882.79 | 1,882.79 | 20,471.26 | 1,882.79 | 1,882.79 | 4,309.26 | 1,882.79 | 1,882.79 | 4,309.26 | 1,882.79 | 1,882.79 | 48,461.36 |
| **Net** | 4,834.62 | 6,001.83 | 7,169.04 | (10,252.22) | 1,914.99 | 3,082.20 | 1,822.94 | 2,990.15 | 4,157.36 | 2,898.10 | 4,065.31 | 5,232.52 | |
| **Owner's Ccontribution/Loan** | $0.00 | $0.00 | $0.00 | $11,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | 11,000.00 |
| **Ending Cash** | 4,834.62 | 6,001.83 | 7,169.04 | 747.78 | 1,914.99 | 3,082.20 | 1,822.94 | 2,990.15 | 4,157.36 | 2,898.10 | 4,065.31 | 5,232.52 | |

Plan Projections

| | June 2025* | July 2025 | August 2025 | September 2025 | October 2025 | November 2025 | December 2025 | January 2026 | February 2026 | March 2026 | April 2026 | May 2026 | Year 4 Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | |
| starting cash | $5,232.52 | 4,023.26 | 5,240.47 | 6,457.68 | 12.89 | 1,230.10 | 2,447.31 | 1,238.05 | 2,455.26 | 3,672.47 | 2,463.21 | 3,680.42 | |
| Rental Income | | | | | | | | | | | | | |
| Motel | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 108,000.00 |
| Madden | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 42,000.00 |
| Total Income | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 150,000.00 |
| Total Cash | 17,732.52 | 16,523.26 | 17,740.47 | 18,957.68 | 12,512.89 | 13,780.10 | 14,947.31 | 13,738.05 | 14,955.26 | 16,172.47 | 14,963.21 | 16,180.42 | 188,153.64 |
| **Expenses (General)** | | | | | | | | | | | | | |
| Insurance | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 7,200.00 |
| Property/Room Tax | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 31,200.00 |
| Management / Payroll | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 36,000.00 |
| Utilities | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 20,400.00 |
| Repairs/Maintenance | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 12,000.00 |
| professional fees | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | 6,000.00 |
| Total Expenses | 9,400.00 | 9,400.00 | 9,400.00 | 9,400.00 | 9,400.00 | 9,400.00 | 9,400.00 | 9,400.00 | 9,400.00 | 9,400.00 | 9,400.00 | 9,400.00 | 112,800.00 |
| **Net Operating Income** | 8,332.52 | 7,123.26 | 8,340.47 | 9,557.68 | 3,112.89 | 4,330.10 | 5,547.31 | 4,338.05 | 5,555.26 | 6,772.47 | 5,563.21 | 6,780.42 | |
| **Expenses (Note/Interest)** | | | | | | | | | | | | | |
| Class I Claim (Motel Note) | $1,073.64 | $1,073.64 | $1,073.64 | $1,073.64 | $1,073.64 | $1,073.64 | $1,073.64 | $1,073.64 | $1,073.64 | $1,073.64 | $1,073.64 | $1,073.64 | 12,883.68 |
| Class II Claim (Madden Note) | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 809.15 | 9,709.80 |
| Group I Claims | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Group II/Class III Claims | $2,426.47 | - | - | - | - | - | $2,426.47 | - | - | $2,426.47 | - | - | 7,279.41 |
| Class IV Claims | - | - | - | $16,162.00 | - | - | - | - | - | - | - | - | 16,162.00 |
| Total Plan Expenses | 4,309.26 | 1,882.79 | 1,882.79 | 18,044.79 | 1,882.79 | 1,882.79 | 4,309.26 | 1,882.79 | 1,882.79 | 4,309.26 | 1,882.79 | 1,882.79 | 46,034.89 |
| **Net** | 4,023.26 | 5,240.47 | 6,457.68 | (8,487.11) | 1,230.10 | 2,447.31 | 1,238.05 | 2,455.26 | 3,672.47 | 2,463.21 | 3,680.42 | 4,897.63 | |
| **Owner's Contribution/Loan** | $0.00 | $0.00 | $0.00 | $8,500.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | 8,500.00 |
| **Ending Cash** | 4,023.26 | 5,240.47 | 6,457.68 | 12.89 | 1,230.10 | 2,447.31 | 1,238.05 | 2,455.26 | 3,672.47 | 2,463.21 | 3,680.42 | 4,897.63 | |